IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KATHY ANN HENDRICKSON, *aka*<br>*Kathy Thorberg*,<br><br>Defendant. | CR 21–32–M–DWM<br><br><br>OPINION<br>and ORDER |

On July 28, 2021, the grand jury returned an indictment charging Defendant Kathy Ann Hendrickson with cyberstalking in violation of 18 U.S.C. § 2261A(2)(B). (Doc. 1.) On August 25, 2021, the government filed a notice pursuant to Rule 404(b) of the Federal Rules of Evidence, indicating that it intends to present evidence of the following at trial:

(1) Hendrickson's May 31, 2006 conviction for stalking in Benton County, Washington;
(2) Hendrickson's March 27, 2014 convictions for cyberstalking (three counts) and harassment (two counts) in Walla Walla County, Washington; and
(3) Hendrickson's uncharged February 2018 harassment and stalking of an individual in Spokane Valley, Washington.

(Doc. 15.) The government states that "[t]he evidence is admissible under Rule 404(b) to prove motive, intent, plan, knowledge, and absence of mistake or

1

accident." (*Id.*) Hendrickson seeks to (1) exclude testimony or exhibits related to her previous convictions and (2) exclude facts or evidence not presented to or found by the grand jury. (Doc. 26.) Hendrickson's motion is denied.

## BACKGROUND

The following background is taken from the government's response brief. (*See* Doc. 28.) It is stated below in terms of what it is anticipated the government believes it can prove, or would like to present, at trial.

## I.   Current Conduct: John Doe

Hendrickson met the victim in this case, John Doe, on an internet dating website in 2015 or 2016. Over the course of the next three years, they met in person a few times, usually at John Doe's residence in Trout Creek, Montana. The last time they met was in July 2018, when John Doe ended the relationship. Around that time, Hendrickson started to harass John Doe, calling the Sanders County Sheriff's Office and claiming he sent her a death threat. She also forwarded threatening emails to law enforcement that appeared to have been sent to her by John Doe. She also sent John Doe and his friends nasty emails from a Gmail account (appleshines1@gmail.com) that law enforcement could trace back to Hendrickson. She obtained John Doe's email password and used it to hack his account and send messages to his friends. And, on October 7, 2018, she hacked his account and sent threatening emails to two Sanders County Commissioners and a

receptionist for the county. The subject of the message was "Death," and the body included the text: "Your [sic] going to die" and "You all are going to die. I have lived in this county over 38 years and there's nothing you can do about it. You won't find this on my computer. I'm smarter than you think." On January 31, 2019, Hendrickson used John Doe's email address to threaten then-Governor Steve Bullock: "You are the worst Governor for our state. Do us all a favor and leave. Maybe best if you were terminated permantly [sic]. A gun, which I have many will do the job. Be aware of your surroundings."

On February 7, 2019, the FBI executed a search warrant at Hendrickson's residence in Walla Walla, Washington. They seized her cell phone and conducted a forensic examination. Despite the newness of the phone, they recovered evidence that Hendrickson was stalking John Doe, including an application called "2ndLine," which allows the user to "spoof" another phone number on a caller ID. John Doe had received dozens of prank calls during the time he was harassed by Hendrickson. The investigators also found pictures on the phone of passwords belonging to John Doe. Hendrickson was interviewed on February 7, 2019 and again on June 1, 2020. She denied taking any property from John Doe, communicating with his friends and family, and hacking his email account. She also denied any connection to the "appleshines1" Gmail account. When

confronted with the incriminating evidence from her cell phone, Hendrickson opined that John Doe might have put it there in an effort to set her up.

## II. 2006 Conviction: John Doe 2

On May 31, 2006, Hendrickson was sentenced to 90 days of work release and 12 months of supervision after being convicted of stalking John Doe 2, an ex-boyfriend. Like the allegation here, Hendrickson and John Doe 2 met online and started dating. After John Doe 2 broke up with Hendrickson, she began stalking him, which included trying to break into his house, slashing the tires of a woman's car who spent the night with him, trying to flood his crawl space, and cutting his cable television line. John Doe 2 also received strange phone calls at work, harassing emails, and had his identity stolen. Fake email addresses and online dating accounts were set up in his name and women he talked to online received threatening emails that appeared to come from him. Hendrickson was charged and convicted of felony stalking.

## III. 2011/2014 Conviction: John Doe 3

On October 14, 2011, Hendrickson was convicted of ten felonies: three counts of cyberstalking, two counts of threatening to bomb, two counts of harassment, two counts of intimidating a public servant, and one count of second-degree identity theft. On appeal, three counts were overturned—both counts of intimidation and one count of a bomb threat. On March 27, 2014, Hendrickson

was sentenced to 43 months in custody on the remaining counts. The court also entered a ten-year order of protection for two of her victims and a ten-year domestic violence protection order for the third victim.

The facts surrounding the 2011 conviction parallel those discussed above. Hendrickson met John Doe 3 online in 2005 and they dated until John Doe 3 broke it off. After they broke up, John Doe 3 began receiving emails, allegedly from John Doe 2, and phone calls threatening his life. *See State v. Hendrickson*, 311 P.3d 41, 43 (Wash. 2013). His tires were also slashed. *Id.* "Another time, he came home to find Ms. Hendrickson in his kitchen, uninvited, and believed that she had accessed his personal computer." *Id.* And "[t]he police started coming to his house with audio recordings of someone purporting to be him trying to solicit sex for money." *Id.* "He was accused twice of being a pedophile[]" and he lost his job. *Id.* He was arrested twice and had his utilities shut off. *Id.* His checks started to bounce because his military pension was readdressed to New York. *Id.* Finally, after he moved to Kentucky, a Facebook page was opened in his name seeking a hit man and someone emailed his supervisor saying that he had harassment charges pending in Washington State. *Id.*

IV.   **February 2018 Conduct: John Doe 4**

John Doe 4, who works for the Postal Service, met Hendrickson on a dating website in February 2018. Hendrickson showed up twice at John Doe 4's house

5

unannounced and without permission. After her second visit, John Doe 4 noticed someone had entered his shop and his truck registration was missing. He also noticed his Facebook account was hacked and he started receiving messages from an unknown woman asking him why he did not like Hendrickson. During this same time, John Doe 4 was accused by his work supervisor of harassing a woman on Facebook. The Postal Service Inspector General conducted a formal investigation and concluded someone was calling in false allegations in an attempt to get John Doe 4 in trouble. No charges against Hendrickson have been filed.

## ANALYSIS

### I.     Previous Convictions

Pursuant to Rule 404(b)(1), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). A court may, however, refuse to admit such evidence under Rule 403 if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See United States v. Montgomery*, 150 F.3d 983, 1000 (9th Cir. 1998). Here, Hendrickson

6

argues that the evidence at issue does not meet the requirements of Rule 404(b)(2) and that, even if it did, it should be excluded under Rule 403; neither is persuasive.

### A. Rule 404(b)

The Ninth Circuit has articulated a four-part test to determine the admissibility of evidence under Rule 404(b): "Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) . . . the act is similar to the offense charged." *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002) (quotation marks omitted). Hendrickson argues that the first and second prongs of this test are not satisfied here.[1] Based on the government's proffer, that position lacks merit.

#### 1. Materiality

Hendrickson first argues that her "2006 and 2011 convictions in Washington do not prove a material element of the crime currently charged because the facts of that case are unconnected with the specific facts of this crime as charged." (Doc. 27 at 5.) In response, the government argues that Hendrickson's prior conduct "is material to proving motive, knowledge, plan, identity, absence of mistake and lack

---

[1] The government addresses all four prongs in its response brief. (*See* Doc. 28 at 10–14.) While the government's position is persuasive as to all four prongs, only those in dispute are discussed here.

7

of accident," with specific focus on knowledge and identity. (Doc. 28 at 10.) The government has the better argument.

As it relates to knowledge, knowledge is not a specific element of stalking under 18 U.S.C. § 2261A(2). As a result, the cases that rely on "knowledge" in the drug conspiracy context are somewhat inapposite. *See,e.g., United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005). Nonetheless, the Ninth Circuit also recognizes "knowledge" as a more general concept, i.e., familiarity with the method and means of a crime as to show that a particular defendant's actions "were not an accident or a mistake." *Compare id.* at 1019 ("The conviction tended to show that Vo was familiar with distribution of illegal drugs and that his actions in this case were not an accident or a mistake.") *with United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1014 (9th Cir. 1995) (rejecting connection between knowledge required to use methamphetamine and knowledge required to manufacture methamphetamine); *see also United States v. Anwar*, 428 F.3d 1102, 1111 (8th Cir. 2005) (holding trial court did not abuse its discretion in admitting the defendant's "prior acts of solicitation of American women to marry Pakistani men so the men could remain in the United States" as relevant to his intent to commit marriage fraud). Accordingly, "the government must prove 'a logical connection between the knowledge gained as a result of the commission of the [other] act and the knowledge at issue in the charged act.'" *Vizcarra-Martinez*, 66

8

F.3d at 1014 (quoting *United States v. Mayans*, 17 F.3d 1174, 1181–82 (9th Cir. 1994)) (alteration in original).

There is a logical connection between the knowledge Hendrickson had and gained in stalking prior intimate partners and the knowledge necessary to allegedly harass and injure the victim here. The proffered "other act" evidence shows that Hendrickson has the knowledge necessary to steal personal information and hack emails and other means of electronic communication for the purpose of harassing or intimidating an individual. It also shows an absence of mistake or accident. The Ninth Circuit has generally approved the "admission of evidence of prior similar acts to prove state of mind [in cases] concern[ing] offenses involving nonspontaneous intent." *United States v. Bettencourt*, 614 F.2d 214, 217 n.6 (9th Cir. 1980). As a result, such evidence is not excluded at this time.

In cases where 404(b) evidence is used to establish identity, "the characteristics of the other crime or act must be sufficiently distinct to warrant an inference that the person who committed the act also committed the offense at issue." *United States v. Luna*, 21 F.3d 874, 878–79 (9th Cir. 1994) (quotation marks omitted). Put differently, the conduct must be "so unusual or distinctive as to constitute [the defendant's] personal signature." *United States v. Ezzell*, 644 F.2d 1304, 1306 (9th Cir. 1981). Here, the similarities between the anticipated 404(b) evidence and the allegations in the Indictment are also sufficient to warrant

9

its admission to prove identity. The nature of Hendrickson's harassment (sending messages to other individuals either under the guise of the victim or to implicate the victim) are similar across all the cases. Nevertheless, there are some differences. In the earlier cases, Hendrickson tended to contact law enforcement, work supervisors, or potential intimate partners. In this case, Hendrickson's purported emails were sent to, and threatened, public officials. But her 2011 conviction involved similar conduct. *See Hendrickson*, 311 P.3d at 44–45. And even not considering the convictions that were set aside on appeal, the tactics used by the perpetrator and the purpose of the messages was the same: to get the victim in trouble. *See id.* at 43 ("Kathy Ann Hendrickson uses the Internet to avenge herself on people she does not like.").

### 2. Remoteness

Second, Hendrickson argues that the 2006 and 2014 convictions are too remote in time. There is no "brightline" for remoteness. *Vo*, 413 F.3d at 1018–19 (recognizing that a thirteen-year-old conviction was not too remote). The facts currently before the Court indicate that Hendrickson's relationships—and the attendant stalking conduct—are sequential; she meets someone online, they date, they breakup, she harasses them, and then she moves on to the next partner. As recognized by the Ninth Circuit, "if the prior act evidence in this case is

10

sufficiently similar to the charged conduct it may render it probative despite the passage of time." *Id.* at 1019 (quotation marks omitted). Such is the case here.

### B. Rule 403

As is clear from the briefing, the identity of John Doe's harasser and Hendrickson's knowledge are likely to be primary issues at trial. The proffered "other acts" evidence speaks directly to both. As a result, this evidence is highly probative. And to the extent it is potentially prejudicial, such prejudice can be mitigated by a limiting instruction at trial. *See United States v. Arambula-Ruiz*, 987 F.2d 599, 604 (9th Cir. 1993).

### C. Conclusion

Based on the foregoing, Hendrickson's motion to exclude the proffered 404(b) evidence is denied. Nevertheless, the proper introduction of that evidence will depend on how the government proceeds with its case-in-chief at trial. As a result, this is not a "final" ruling on admissibility and Hendrickson may raise a trial objection if the government's presentation does not conform to the analysis above.

## II. Grand Jury Evidence

Hendrickson further argues that "[a] [d]efendant may not be convicted on the basis of facts not found by or even presented to a Grand Jury." (Doc. 27 at 6.) While puzzling, the argument appears to be that the indictment can only be amended by resubmission to the grand jury and "the Prosecution has persuaded the

11

Grand Jury to issue an Indictment without a finding of the essential facts necessary to establish all of those elements of the alleged offense." (*Id.* at 8.) This abstract legal argument is rejected in the absence of any further information about what Hendrickson believes should have been included or presented versus what was not included or presented. It is also rejected insofar as Hendrickson argues that the government was required to present its entire factual case to the grand jury. It is the responsibility of the grand jury is to "determine whether or not there is probable cause to prosecute a particular defendant," *United States v. R. Enters., Inc.*, 498 U.S. 292, 298 (1991), not to hear the full merits of a criminal prosecution.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Hendrickson's motion (Doc. 27) is DENIED, although Hendrickson may renew her objection to the government's 404(b) evidence during trial, if appropriate.

DATED this 10 day of January, 2022.

08:37. A.M.

Donald W. Molloy, District Judge
United States District Court

12