IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 21–32–M–DWM |
| Plaintiff, | |
| vs. | ORDER |
| KATHY ANN HENDRICKSON, *aka Kathy Thorberg*, | |
| Defendant. | |

On October 2, 2023, Defendant Kathy Ann Hendrickson filed a motion to reduce her 52-month federal cyberstalking sentence under 18 U.S.C. § 3582(c)(1)(A). (Doc. 92; *see* Doc. 77 (Judg.).) Her projected release date is February 13, 2025. *See* Inmate Locator, http://www.bop.gov/inmateloc (accessed February 8, 2024). At Hendrickson's specific request, on October 23, 2023, counsel was appointed to represent the defendant. (Docs. 97, 98.) Appointed counsel filed an amended motion on January 17, 2024. (Doc. 102.) The government opposes. (Doc. 106.) For the reasons stated below, the defendant's motion is denied.

ANALYSIS

The First Step Act of 2018 gives district courts wide discretion to reduce an existing term of imprisonment so long as a defendant first seeks relief from the

1

Bureau of Prisons ("BOP") and the reduction: (1) is consistent with the applicable policy statements of the Sentencing Commission, (2) takes into consideration the sentencing factors of 18 U.S.C. § 3553(a), and (3) is warranted by "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A); *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (per curiam).[1] Here, Hendrickson argues that her father's medical needs, her personal medical needs, and her personal growth while incarcerated collectively are extraordinary and compelling circumstances that warrant her early release. She does not substantively address how the sentencing factors of 18 U.S.C. § 3553(a) should be weighed in light of her post-conviction conduct. The government argues that Hendrickson does not fall into any of the categories delineated by the United States Sentencing Commission as constituting an extraordinary and compelling reason for release and that the application of the § 3553(a) factors weigh against early release. Because Hendrickson has not

---

[1] On November 1, 2023, the Sentencing Commission amended its policy statements to further define "extraordinary and compelling reasons." *See* 2023 Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary, First Step Act—Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (effective Nov. 1, 2023) (available at https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023). Although the amendments were not in effect when Hendrickson filed her pro se motion, (*see* Doc. 92), the amended motion filed by counsel was filed after the guidelines took effect and addresses the amended guidelines, (*see* Doc. 103).

demonstrated an extraordinary and compelling reason, and the § 3553(a) factors do not support her early release, her motion is denied.

## I.     Exhaustion of Administrative Remedies

A defendant may only file a motion for compassionate release with the district court once she has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, Hendrickson filed a request for relief with the warden at her facility on October 1, 2023, and she received no response. (*See* Docs. 103-2, 103-3.) Hendrickson has therefore exhausted her administrative remedies as required by statute.

## II.    Extraordinary and Compelling Reasons

The Sentencing Guidelines provide explicit examples of what constitutes an "extraordinary and compelling reason," including the medical circumstances of the defendant and the medical incapacitation of the defendant's parent. USSG §1B1.13(b)(1), (3). (Nov. 2023). The Guidelines also explain that while "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason," it "may be considered in combination with other circumstance." *Id.* §1B1.13(d).

A.    **Family Circumstances of the Defendant**

Hendrickson contends that she is eligible for early release to care for her

elderly and ailing father.[2] The government responds by casting doubt on whether

Hendrickson's relationship with her father is sufficient for her to serve as his full-

time caregiver.  While neither side's argument is entirely convincing, ultimately

Hendrickson has not demonstrated why she is the only available caregiver for her

father.

The Sentencing Commission's policy statement provides that "family

circumstances of the defendant" can constitute an extraordinary and compelling

reason where the defendant's parent has become incapacitated and "the defendant

would be the only available caregiver for the parent."  District courts have

construed this requirement strictly, considering whether the defendant has

demonstrated a close relationship with the incapacitated parent or whether other

people could possibly care for that parent.  *See United States v. Brown*, 2023 WL

8650290, at *4 (W.D. Wash. Dec. 14, 2023); *United States v. Ross*, 2023 WL

8868814, at *5 (D. Or. Dec. 22, 2023).  "Courts routinely deny motions for

compassionate release when inmates cannot show that they would be the only

---

[2] In the Presentence Investigation Report, Hendrickson "reported never knowing
her father." (Doc. 79 at ¶ 42.)  She further reported that she considers the man her
mother next married, Conrad Guttman, to be her father. (*Id.*)  Thus, this Order will
assume the "father" to whom she is referring is her stepfather.

available caretaker." *United States v. Suarez*, 2023 WL 7713580, at *3 (S.D. Cal. Nov. 15, 2023).

In her statement filed with this motion, Hendrickson affirms that upon release "I can reside with my father in Lynnwood, WA." (Doc. 103-3 at ¶ 11.) She further affirms: "If I reside with my father it will provide me with opportunities to check in on my father. As indicated in my BP8, my father just recently lost his wife of more than fifty years. He is 87 years old and is suffering from liver disease and diabetes other ailments [sic]." (*Id.* at ¶ 13.) Hendrickson's counsel affirms that she spoke with Hendrickson's father, who reported the recent loss of his wife and that Hendrickson "would be able to reside with him should she be released from prison and that she would be of assistance to him." (Doc. 103-2 at ¶ 7.) Hendrickson further affirms that her sister is "unable to care for [their father] because she has a full time job" and that "[t]here is no one else that can take care of him." (Doc. 103 at 5.)

While Hendrickson's willingness to help care for her ailing father is laudable, she has not met her burden of demonstrating that she is the only available caregiver for her father. She notes that her sister cannot care for their father, but it is unclear why the only other option is for Hendrickson to be the caregiver. The government points out in its brief that Hendrickson got along well with her father but did not live with him growing up; rather, she was raised by her maternal

5

grandparents.  (Doc. 79 at ¶¶ 42–43.)  The record does not show a substantial nor continuous relationship such that she is the only viable caregiver.  Nor is it clear that there is no other individual who could provide that care.  Further, the record does not reflect that Hendrickson's father even needs a full-time caregiver.  The statements provided by both Hendrickson and her counsel merely note that if Hendrickson were to be released to live with her father, she would be "of assistance" to him, not that she would be his caergiver.  (*See* Doc. 103-2 at ¶ 7.) Therefore, Hendrickson has not demonstrated that her family circumstances are extraordinary and compelling for this purpose.

## B.    Medical Circumstances of the Defendant

Hendrickson next contends that she must be released to take care of her own medical issues.  The government disagrees but does not substantively brief the issue, merely noting that her medical conitions, "alone, or in concert" fail to meet the standard set out in §1B1.13(b)(1).  Notwithstanding, Hendrickson's medical condition do not constitute an extraordinary and compelling reason to warrant early termination.

Extraordinary and compelling medical circumstances may take several forms, including *inter alia*: (1) "a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory)," such as "metastatic solid-tumor cancer" or "end-stage organ disease," (2) serious physical or medical conditions that diminish

6

the ability to provide self-care; and (3) a medical condition "that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." USSG §1B1.13(b)(1)(A)–(C).

Hendrickson does not specify as to which medical circumstances provision applies. However, from context it can be deduced that section (C) is the most appropriate to analyze. *See* §1B1.13(b)(1). ("The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."). Hendrickson suffers from many medical conditions for which she received treatment prior to her incarceration and that she argues she does not receive adequate treatment in custody.

First, she suffers from "bouts of sciatica" and other back pain. (Doc. 103 at 6; *see also* Doc. 105-1 at 2.) As of a pre-incarceration medical check-in from October 2021, Hendrickson was taking turmeric and ibuprofen for her back pain. (Doc. 105-1 at 2.) Her prison medical records reflect that she is suffering from "severe back pain" for which "ibuprofen is not working." (Doc. 105-2 at 2.) Her records also reflect that as of her last check-in with BOP medical staff, "her complaint is 'passed' and she is doing well, declined to be further evaluated." (*Id.*) She was advised at that time to follow up as needed. (*Id.*) In the statement she

filed with this motion, Hendrickson affirms that she suffers serious pain and has only been prescribed Tylenol and ibuprofen, which she avers is insufficient. (Doc. 103-3 at ¶¶ 6–8.) She says that this treatment is ineffective and that the prison medical staff refuse to treat her. (*Id.*) BOP medical records affirm her account but also note that her pain has passed. Second, Hendrickson requires medical care for her hypothyroidism. (*See id.*) Despite her argument that she cannot receive proper treatment for that condition while in custody, her medical records indicate that she is being provided the same medication—levothyroxine—for that condition both before and during her incarceration. (*Compare* Doc. 105-2 at 4 *with* Doc. 105-1 at 2.) Thus, both her back pain and thyroid condition arguments fail to meet the Guidelines standard. While regrettable, these medical ailments are far from extraordinary, and the record shows that BOP's professional medical staff and facilities are equipped to provide the necessary care, assuming Hendrickson's cooperation.

## C.   Rehabilitation

Finally, Hendrickson argues that her personal growth while incarcerated, coupled with the factors above, constitutes an extraordinary and compelling reason. The government disagrees and counters that because Hendrickson has not been able to demonstrate any stand-alone extraordinary and compelling reasons for early termination, rehabilitation is not a relevant consideration. Although

8

Hendrickson's clean prison disciplinary record, consistent prison employment, and completion of many prison classes are commendable, the government is correct that because she has not met her burden of demonstrating that any other extraordinary and compelling reasons are present, rehabilitation does not stand alone. *See* USSG §1B1.13(d) ("[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."); *see also United States v. Willis*, 663 F. Supp. 3d 1203, 1211 (D. Or. 2023) ("[A] Defendant's clean prison record and steps toward rehabilitation are only relevant to the analysis if other factors are extraordinary and compelling.").

## III.   Section 3553(a) Factors

Even if an extraordinary and compelling reason did exist to reduce Hendrickson's sentence, demonstrating such a reason meets only one element of § 3582(c)(1)(A).  Any relief granted must be consistent with the federal sentencing objectives set forth in 18 U.S.C. § 3553(a).  Pertinent factors include the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational training and medical care.  *See* 18 U.S.C. § 3553(a)(1), (2).  Courts may also consider the advisory guideline range

and the need to "avoid unwarranted sentencing disparities" among similarly situated defendants. *See id.* § 3553(a)(4), (6).  Hendrickson does not substantively address how her early release comports with the § 3553(a) factors.  The government argues that consideration of these sentencing factors does not support Hendrickson's early release at this time.  The government is correct.

After a three-day jury trial, Hendrickson was convicted of violating a federal cyberstalking statute when she stole personal identifying information from her victim and used it to harass him, causing substantial emotional distress.  (*See* Docs. 87, 88, 89.)  To do so, she used an anonymous email account to threaten the victim as well as to hack into the victim's email, posing as the victim to send threatening messages to public officials.  (*See* Doc. 79 at ¶¶ 5–14; *see also* Doc. 86 at 24.)

Based on a total offense level of 20 and a criminal history category of II, Hendrickson's advisory guideline range was 37 to 46 months.  (*See* Doc. 79 at ¶ 63.)  Hendrickson requested a low-end guideline sentence while the government recommend the statutory maximum sentence of 60 months.  (Doc. 86 at 23.)  At sentencing, Hendrickson maintained her innocence, (*see* Doc. 79 at ¶¶ 5–14), and was sentenced to a custodial sentence of 52 months followed by three years of supervised release, (Doc. 77 at 2–3).  The Court determined that the seriousness of the offense, just punishment, and the effort to promote respect for the law supported the slight upward variance.  (*See* Doc. 86 at 23.)

Hendrickson has served roughly half of her 52-month sentence. (*See* Doc. 103-1 at 3.) As the government now argues, and the Court explained at sentencing, this sentence was specifically crafted to protect the public from future similar crimes by Hendrickson, given that this was not the first time she engaged in this type of offense. (*See* Doc. 86 at 25; *see also* Doc. 79 at ¶¶ 39, 40 (describing Hendrickson's criminal history of similar offenses.) Reducing Hendrickson's sentence to the partial sentence she has served to date would denigrate the seriousness of her crimes and undermine respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A)–(C). It would also fail to continue to "to protect the public from further crimes of the defendant," given her repeated offense history. *Id.* at § 3553(a)(2)(D). Thus, the 18 U.S.C. § 3553(a) sentencing factors weigh against early release.

## CONCLUSION

Accordingly, IT IS ORDERED that the defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Docs. 92, 102)[3] is denied.

DATED this __12th__ day of February, 2024.

_____
Donald W. Molloy, District Judge
United States District Court

---

[3] Hendrickson's motion under 28 U.S.C. § 2255, (Doc. 93), shall be addressed by separate order.